All right, Mr. Geselson, is that correct? All right, you're up, sir. May it please the court, Ben Geselson for Mr. Vetcher. Because it could obviate the need for a decision on other arguments, I'll focus on the removability issue and the categorical mismatch between the state and federal offenses, and then briefly discuss the issue of a particularly serious crime. And my colleague, Mr. Little, will focus on the due process violation for insufficient legal resources. So because the government does not dispute that a categorical mismatch exists between the Texas and federal controlled substance statutes when the Texas The only point in dispute is whether there's a realistic probability that Texas would apply its controlled substance statute to conduct falling outside the generic federal definition, and there is. Last year in Vasquez, this court recognized that Castillo-Rivera requires that a person deported based on a drug offense has to satisfy the realistic probability test. And Mr. Castillo-Rivera, just like Mr. Duenas-Alvarez and Mr. Vasquez, all relied on what the Supreme Court called the application of legal imagination by resting on plausible interpretations of the statutory text made in a vacuum. By contrast, Mr. Vetcher did what each of those parties had failed to do, which was to proffer police arrest records, court documents, briefs, and court of that Texas does, in fact, apply its controlled substance statutes broadly and aggressively without any regard to the federal schedules and sometimes even without regard to the precise items listed on the Texas penalty groups themselves. So the government now asks the court to extend Castillo-Rivera and Duenas-Alvarez by adding a host of additional requirements beyond simply showing a case in which a state statute was applied in a non-generic manner, which Mr. Vetcher did with Carter v. State and Mosley. Castillo-Rivera and Duenas-Alvarez did not, for example, require that the defendant in the case be convicted, that the conviction occur at a specific time relative to the state of the federal statute, that a particular version of controlled substance context, the substances creating the categorical mismatch must exist on one particular state schedule and not another. So Carter v. State and Texas v. Mosley each show not just a reasonable probability, but a strong likelihood that Texas would and does apply its controlled substance statute in a non-generic manner. In Carter, where the accused was eventually convicted, the law enforcement began trying to shut down the sale of the relevant substances three years before those substances found their way onto the federal schedules. In 2014, the DA notified the accused that the product he was selling was illegal. There was a search warrant issued and products seized in 2014. In 2015, the legislature did change penalty group 2A and the specific justification that was given was to allow Texas to, quote, stay ahead of drug dealers instead of vice versa. In Mosley, the state announced its policy, which is, again, to always stay ahead of the game when it comes to controlled substances violations, so that it wouldn't just act ahead of the federal schedules, but in fact act ahead of those items specifically listed on the Texas penalty groups. So those cases have to show at least a reasonable probability that Texas applies Section 481.113 of the Texas Health and Safety Code in a non-generic manner. The government's proposed extension of Castillo-Rivera and Duenas-Alvarez renders the reasonable probability test a practical impossibility because of all those additional technical requirements. It also would mean that the BIA could proceed under the categorical approach, but then a deportee could only show a categorical mismatch by looking to the facts of his own case, which is inconsistent with the categorical approach. So it's important to remember that when Duenas-Alvarez held that a party needs to show a realistic probability of non-generic state enforcement by citing a case, applying the state in a non-generic manner, the court was considering whether one could rely on nothing more than the statute's text, or the text of the respective state and federal statutes, and imagination on how the state statute could be enforced in a non-generic way. And so the choice was between showing nothing or showing something. And so when the Supreme Court in Duenas-Alvarez said you have to show a case showing a non-generic state enforcement, it was basically saying you have to make some showing. It wasn't laying out a checklist of several additional technical requirements that a deported or an alien subject to deportation for a drug offense had to show. And so what the state tries to do is actually go beyond Castillo-Rivera and extend it far beyond what Duenas-Alvarez would admit. So because Mr. Vecher has shown a categorical mismatch and a reasonable probability of non-generic state enforcement of Section 481.113 of the Texas Health and Safety Code, his conviction can't serve as a removable that the courts vacate that portion of the BIA's order and remand. I want to touch briefly on the denial of withholding of removal under 8 U.S.C. 1231B.3.B. based on the BIA's determination that Mr. Vecher was convicted of a particularly serious crime. Now we understand that the Third Circuit recently retreated from ALACA based on the absence of other circuits joining, but we continue to believe that the Third Circuit got it right in ALACA for two reasons. First, as a matter of language, grammar, and syntax in the statute, a particularly serious crime has to be a subset of aggravated felony and not the other way around. And second, the history and policy of that provision make clear that Congress's calibration of particularly serious crime in connection with aggravated felony support its being a subset of aggravated felony and not the other way around. And so if we start with the text, the text of 1231B.3.B. says an alien who's been convicted of an aggravated felony or felonies for which the alien's been sentenced to an aggregate term of imprisonment of at least five years shall be considered to have committed a particularly serious crime. So that first sentence identifies two factors that together constitute a per se particularly serious crime. A class of aggravated felony or felonies for which the alien's been convicted of an aggravated felony or felonies for which the alien's been sentenced to an aggregate term of imprisonment of at least five years. The second sentence then goes on and says the previous sentence shall not preclude the Attorney General from determining that notwithstanding the length of sentence imposed an alien's been convicted of a particular serious crime. So that second sentence gives the Attorney General limited discretion over the second factor but not the first. In other words, a class of aggravated felony or felonies for which the alien's been convicted of a particularly serious crime notwithstanding the length of sentence imposed but not, notwithstanding the class of crime committed. So if I move, if we move to the history and the policy, you can see the evolution of this act. In the Immigration Act of 1990, particularly serious crime and aggravated felony were bound together as coterminous. In 1996, the AEDPA unshackled the two in order to allow fewer aliens to be disqualified from withholding of removal, not more. And then a couple of months later, Congress determined that that had been a little bit too much and so recalibrated to rebind a subset of aggravated felonies, those with fewer than five years, or those with more than five years, and called those per se particularly serious crimes. And that was in the Illegal Immigration Reform Act of 1996. So this iterative calibration can't possibly be a grant of power to the Attorney General to jump outside the scope of what was originally bound together as coterminous and to then designate lesser crimes, lesser than felonies, to be particularly serious crimes. So to do so, we think, would be contrary not only to the text but also to the history and the policy of the statute. And so with that, I will close. Thank you, sir. Mr. Boo? Thank you, Your Honor. As my colleague indicated, I'm going to really focus my time on the lack of due process in the underlying removal proceedings. Now, much of this argument is undisputed. The government does not dispute that aliens have due process rights in removal proceedings, that those due process rights include the right to adequate law library materials, and that here, Mr. Vecher was denied access to critical legal materials that he needed to make his arguments. Now, the government instead focuses its arguments on the counterargument that none of this really matters because Mr. Vecher managed not to waive any of his arguments, so there's no prejudice. But that's simply not how the prejudice test works. Both parties here, both the government and Mr. Vecher, agree that the Supreme Court laid out the prejudice standard for when a confined individual is denied access to legal materials in the Lewis v. Casey case. Now, that case lays out the controlling standard as that a detained individual only needs to demonstrate that the shortcomings in the library hindered his efforts to pursue a legal claim such that a non-frivolous legal claim has been frustrated or is being impeded. Now, if you apply that standard here, it's very clear that it is that, first of all, Mr. Vecher clearly tried to make non-frivolous arguments. I think the best example of this is the categorical approach argument that my colleague just made here. Mr. Vecher attempted to make that below, but his efforts to pursue it were hindered and impeded because he could not make it without the very foundational legal materials that he needed. And I want to be clear here. These aren't some tertiary points, obscure cases. He did not have access to the federal and state schedules of controlled substances. Those are the most foundational legal materials there are. They're the basic clay out of which you mold a categorical approach argument. You show what's in one category, what's in the other, and then compare them. But without access to either category, he simply had no opportunity to make a winning categorical approach argument. And now what do we do? What is the right remedy for this undisputed constitutional violation that fairly clearly meets the federal standard of Lewis v. Casey? Well, the only way to cure this error is to vacate the order of removal and remand back to the BIA so that Mr. Vecher can have the full range of immigration proceedings with his actual due process rights. And that is what we're asking the court to do. Unless the court has other questions, I'll yield the remainder of my time. Thank you, sir. All right. Let's hear from the government. Good morning, Your Honors. May it please the court, Giovanni DiMaggio on behalf of the Attorney General. Your Honors, because Mr. Vecher fails to satisfy his burden to show a realistic probability that at the time of his conviction, Texas state courts could have in fact applied Penalty Group 2A in a non-generic manner, either by pointing to his case or by other cases, the court must conclude that his 2014 conviction under Texas Health and Safety Code 481.113D is categorically a controlled substance violation under the INA. To be clear, just one point of clarification, the government does not concede that Penalty Group 2A is facially overbroad. It clearly indicated in its answering brief that it assumes so and then nevertheless argues that a realistic probability is not established in this case, and that's why his claim fails. Here, Mr. Vecher's case does not reflect a non-generic application of Penalty Group 2A, not least because, of course, his hallucinogenic mushrooms that he was convicted for having sold were federally controlled at the time of his conviction. Looking at the other cases that Mr. Vecher relies on . . . I'll slow down just a little bit. You've got 18 minutes, so . . . Sure. Forgive me. I have a tendency to speak quickly. I have a tendency to speak quickly. Forgive me. Looking at his other cases, Mr. Vecher, as a threshold matter, I'd like to point out to the court, does not contest Respondent's assertion on page 18 of the answering brief that a search of all Texas state cases yielded not even a single case referencing, let alone applying, one of the three allegedly non-generic drug classes, or even one of the 43 specific substances included thereunder that he identified in Penalty Group 2A, which I ran that search again last night, and it still comes up with nothing. Then looking at the specific cases he points to, for various reasons, they are unavailing to Mr. Vecher, starting first with Carter. Carter is inapposite, as the government explained to the court in its recently filed 28J letter, because it related to a version of Penalty Group 2A that was not in effect at the time that Mr. Vecher was convicted. The relevant time period is at the time of his conviction. Carter involved a version of the Texas schedules that came after his conviction, I believe in 2015 is when that drug schedule came out, that was relevant in Carter. In any event, Carter is not even an example, generally speaking, of a non-generic application of a Texas penalty group, because at the time that the defendant was convicted in Carter, the drug at issue was federally controlled. Looking generally also to the point that Mr. Vecher makes in his opening brief of page 21, and throughout his opening brief and reply brief, that there is indication, he believes, that the state of Texas has a readiness and affirmative intention to apply 41.113 over broadly, or a policy maybe to do so. All of these types of arguments fall well short of establishing the realistic probability standard, primarily because they at best invoke only a theoretical possibility of a non-generic application of the Texas drug schedules. What about Butylone? Butylone does not help him, because... What is it in relationship to these other carcinogenic drugs? Well, Butylone, actually I wanted to clarify one thing from the government's brief. Butylone is actually listed in Penalty Group 2, not Penalty Group 1, as the government misstated in its brief. But as relevant to the court's inquiry, Butylone is a drug that was federally controlled as of March 2014, as Petitioner concedes in his opening brief at page 20, and thus by extension would have been federally controlled as of April 2014, which was the time that Mr. Vecher was convicted. And so the salient point here is that if you're looking at the Texas 41.113D, and you're trying to discern when Mr. Vecher was convicted, could that conviction have been for some non-generic drug like Butylone? Well, the answer is no, because at the time of his conviction, Butylone was federally controlled. So there's no realistic probability that when Mr. Vecher was convicted, it could have been for something like Butylone. And as I was saying earlier, the invocation of things like a readiness or intention to over-broadly prosecute the Texas statute at issue here does not get Mr. Vecher outside the realm of theoretical possibility of a non-generic application, and therefore fails to meet the Vasquez standard, which requires, and I quote, that he point to his own cases or other cases in which the state courts in fact did apply the statute in the non-generic manner that he suggests. Sorry, Your Honor, you were about to ask a question? Okay, forgive me. And to be sure, the realistic probability standard should be one that involves looking at convictions as opposed to things like arrests records. The fact that the realistic probability test relies on looking to state court decisions strongly suggests that prior convictions and not just arrests are necessary. This is an intuitive read of the realistic probability standard, and also is a reading of it that appreciates the context we're in. This is a removal based on a conviction for a crime relating to a controlled substance, and the inquiry at the heart of this case is whether at the time of said conviction there was a realistic probability of a non-generic application of the Texas statute. And it's intuitive that in engaging that analysis, the court would apply, would compare apples to apples, convictions to convictions. Arrests without more tell the court very little, and is the proverbial equivalent of comparing apples to oranges, because without a conviction or else evidence that a court has upheld a charge, there's no way to tell whether the underlying charge was even ultimately substantiated or could have been substantiated without speculating. And I should note, if the court would like additional authority on that specific point, which came to a head in the reply brief, I am prepared to submit additional authority to the court on that point. I did in preparing for argument find one case in the Second Circuit that came out after all of the briefing was completed called Matthews v. Barr, 927F3RD606. The pin site is 622-623, and that's a Second Circuit decision that issued in June of 2019, in which the Second Circuit declined to rely on arrest reports without proof of subsequent conviction or a court upholding the charges, which was consistent with the BIA precedent decision that the Circuit cited there. Regardless of all of this about whether we can rely on arrests or not, precisely because of the question I answered for you, Judge Higginbottom, the court need not necessarily decide that issue, because again, the arrests at bottom are pointing to the substance butylone. And as I mentioned earlier, butylone was federally controlled at the time that Mr. Vetcher was convicted. So again, his reliance on these arrests in this specific case don't get him anywhere. Lastly, he relies on Mosley to advance his realistic probability argument, but that also is unavailing. The mere statement by the Texas court in Mosley that a charging document effectively need only point to Penalty Group 2A, as opposed to a specific substance, only gets Mr. Vetcher to square one of his argument, which is, okay, there's a theoretical chance here that there might be a non-generic application, because assuming Penalty Group 2A is too broad, and if the charging document only lists Penalty Group 2A, well, what if that could result in a non-generic conviction? Again, this doesn't get us outside of the realm of theoretical. Because he needs to show that the state court could, in fact, have applied Penalty Group in a non-generic manner, which Mosley doesn't help him do, because at the time of his conviction, the drug at issue in Mosley, which was XLR11, was federally controlled. I believe it became federally controlled as of May 2013. And for that matter, it was also federally controlled when Mr. Mosley was convicted in his case. So for those reasons, Your Honors, we ask that you conclude that the board did not err when it concluded that his conviction under Texas Health and Safety Code 481.113D is categorically a controlled substance violation. And last point to be sure on that, we do not ask the court to extend or create new obligations for itself under Vasquez, but we're simply asking the court to apply Vasquez here. And for the reasons I've stated, that application yields the result that the board came to, which is that there's a categorical match. As to the particularly serious crime issue, this court should join the six other circuits to have concluded that a crime need not be an aggravated felony to be deemed particularly serious for purposes of withholding of removal. No circuit to consider this issue has concluded to the contrary. And because the withholding of removal statute is silent or ambiguous as to the meaning of particularly serious crime, this court should accord Chevron deference to the board's reasonable and permissible interpretation of this term. All of the six circuits cited in the government's brief and in its 28J letter either expressly or implicitly found that the withholding of removal statute is silent or ambiguous as to this issue. I won't go through every single one of them, but I'll just list that it was Ali in the Seventh Circuit. This is in chronological order. Nathangani in the Second Circuit. NAM in the Tenth Circuit. Gao in the Fourth Circuit. Delgado, which was en banc, Ninth Circuit. And Bastardo-Ballet, which was also en banc in the Third Circuit. Let me ask you this. I note that the reversal in Alaca, the en banc case, but I note that they did not discuss or rely on Chevron deference. So in all the ones that hold, which of them or do most of them rely on Chevron deference in addition or just the reading on the statute? So all of them but Bastardo-Ballet rely on Chevron deference. So Ali, Nathangani, NAM, Gao, and Delgado all deferred to the board's interpretation of particularly serious crime. With the exception of Ali, which predated the board's decision in matter of NAM, they all specifically deferred to matter of NAM. Ali deferred to the then existing standard as cobbled together by board precedent predating NAM. The only reason Bastardo-Ballet did not invoke Chevron, it was likely because it did not have occasion to pass upon the agency's interpretation of the term particularly serious crime in matter of NAM, and that was because the petitioner in that case focused his arguments exclusively on the Third Circuit's interpretation of particularly serious crime in Alaca, and so the court actually concluded in Bastardo-Ballet that the petitioner there waived any challenge to the board's application of matter of NAM. In any event, though, I should say that the Third Circuit in Bastardo-Ballet did at least conclude in accordance with matter of NAM that the language of the withholding of removal statute shows that aggravated felonies are merely a subset of particularly serious crimes, contrary to its prior holding in Alaca. So there is synchronization across the circuits on this that have considered the issue, and as I mentioned earlier, all of the circuits that have considered the board's interpretation of the term PSC, or excuse me, particularly serious crime, which would number five of the six, have accorded Chevron deference. And again, I won't belabor that point, but as the cases in the government's brief make clear, the language of the withholding of removal statute is in fact silent or ambiguous on this issue. It simply states, and I read from 1231b3b, that the attorney general, that an alien is that he has been convicted by a final judgment of a particularly serious crime. Full stop. And then there's just the one qualification at the bottom that says, by the way, the attorney general doesn't have discretion, in fact, it's a per se particularly serious crime if the conviction is for an aggravated felony and the sentence was more than five years. This, on the face of it, tracks, as the courts have noted, including more recently Bastardo Valle in the Third Circuit, that the aggravated felony plus five years of sentencing is a subset of particularly serious crimes, and to read otherwise would violate the rule against surplusage, which is to say that the fact that Congress here has used two terms should point to the fact that there are two definitions for said terms, otherwise why use the two terms? In the beginning of the statute, Congress says that the attorney general may decide that someone's been convicted of a particularly serious crime, and then it uses a second and different term down below to qualify the subsection of convictions that are per se particularly serious crimes, in this case the aggravated felonies. So for those reasons, Your Honor, the court should, consistent with the other circuits to consider this issue, conclude that the statute is silent or ambiguous as to the definition of the term particularly serious crime, and then proceed to accord Chevron deference to the board's reasonable and permissible construction based on the language of the statute as well as the agency's long history of applying a circumstance-specific and multifactored approach to these determinations to decide whether a crime in fact qualifies as a particularly serious crime, regardless of whether it was for an aggravated felony. As to the due process claim, because Mr. Vetcher fails to make the requisite showing of substantial prejudice, which is required under this court's decision in ANWR, his due process argument that the Department of Homeland Security's law library resources were inadequate to allow him a meaningful opportunity to present his case necessarily fails. One point of clarification here, despite Mr. Little stating that the government has conceded that Mr. Vetcher had these rights, again, for the sake of argument, the government here has assumed that he has these rights, as the government prefaced before making the prejudice argument, although there exists a right generally for criminal detainees to have adequate access to law libraries, in civil immigration proceedings, aliens do not enjoy the full breadth of rights that a detainee would enjoy in criminal proceedings, but even assuming that this right applies to Mr. Vetcher, he does not demonstrate that the alleged shortcomings in the library hindered his efforts to pursue a legal claim, which is what he's required to show per the Supreme Court's decision in Lewis. That case involved, for examples of when someone can make that showing, the Lewis court pointed to, for example, a complaint being dismissed in its entirety for failure to satisfy some technical requirement that perhaps a detainee could not have known about because of the inadequacy of the access to materials, or a detainee is so stymied by the alleged inadequacies that he's unable to even file the complaint to begin with. To be sure, the Lewis decision clarifies, instructively, that it does not create a guarantee that inmates will have the wherewithal to transform themselves into litigating engines capable of filing every kind of claim, rather what this right guarantees, to the extent that applies here, is simply the conferral of a capability of bringing the contemplated challenges before the courts, and I'm reading from Lewis 518 U.S. at 356. Against that backdrop, Mr. Vetcher's argument that he was prejudiced by the apparent inadequate access to the DHS law libraries is completely belied by the record, which reflects copious, thorough, legally complex, creative, and frankly impressive pro se briefing, which got him through approximately four years' worth of proceedings before the agency, proceeding entirely pro se at all times, at one point drawing praise, justifiably, from the immigration judge, and I'm referring to the record at page 1556, complimenting him that he single-handedly brought the immigration court to a standstill for over a year at one point. He prevailed on a stay motion on a petition for review that he had prior filed with this dismissed upon respondent's motion, because he had prevailed on a motion to reopen before the board, and secured himself a remand to the immigration judge, and he had also prevailed on a direct appeal before the board to secure himself another remand to the IJ, and on review, as the government notes in its opening brief, he does not even contend that he waived or failed to exhaust any issues that he wished to raise before the court on petition for review. So again, against this backdrop, the court, I think, would be hard-pressed to conclude that he did not enjoy the limited guarantee announced in Lewis of simply being able to be capable of bringing his contemplated challenges. He certainly has shown that he was at least capable of doing that much. The respondent will not otherwise address the Pereira-based challenge that Mr. Vecher raised in his opening brief, as he has withdrawn that pursuant to his 28-J letter, and unless the court has any additional questions, the respondent would ask that the court deny the PFR, or the petition for review. Thank you. Thank you, sir. Next, our guest. Just a few points in rebuttal, Your Honors. The government may not have conceded that there was a mismatch between the schedules, but it certainly didn't argue it below and doesn't argue it here, that there wasn't a mismatch. As far as the realistic probability of non-generic enforcement, Duenas-Alvarez and even Castillo-Rivera were clear that it doesn't have to be Mr. Vecher's own case that showed the non-generic enforcement, and as to the other cases, the Carter and the Mosley, you heard the government asking the court to extend Castillo-Rivera and add additional requirements. As to the timing of the conviction, that the conviction has to occur at the same time that Mr. Vecher himself was convicted, those requirements just aren't in Duenas-Alvarez, and they're not in Castillo-Rivera. As for Butelon, Moncrief, which was a Supreme Court case after Duenas-Alvarez, it says only prosecution. It doesn't say conviction. It just says that the state has to prosecute it, and so those arrests for Butelon, that started the process for prosecution, and when he was eventually convicted, the fact that the substance, Butelon, ultimately was put on the federal schedule doesn't mean that Texas doesn't have a reasonable probability of non-generic enforcement. It just means that the feds caught up before his conviction actually went through, but the conviction engine, or the prosecution engine, was well on its way. As for the particularly serious crime element, Mr. Vecher admits, as he has to, that the circuit authority is against him on that, but as the court noted, the majority of those the BIA's interpretation, we would just ask that this court do a robust textual analysis itself, as several of those circuit courts didn't do when they deferred. Our position is that the statute is not silent, and it's not ambiguous, that those two sentences are very clear in setting up a system, and the history supports that in setting up a framework in which particularly serious crime is the subset of aggravated felony and not the other way around. It's not surplusage to say that just because it has two terms, the one must be the subset of the other, the other could be the subset of the one, and that is our argument. As far as the due process points, the Anwar case that Mr. Little discussed said that the person needs only make a strong showing in support of his application, it doesn't need to show that he lost and would have won for there to have been substantial prejudice, and this idea that just because he did a good job below, that the government should be absolved from denying access to legal materials, that's just wrong, I mean, they're essentially saying that as long as he preserved his errors below, then no harm, no foul, but the BIA is no mere practice run for the main event in this court. That process itself matters in and of itself, and just because Mr. Boettcher was clever enough to preserve all of his arguments doesn't give the government a free pass to deny him access to the materials that he seeks, or that he needed to make his case, and so with that I will yield the remainder of my time. Thank you, counsel, for both sides for your briefing and oral argument, the case will be submitted along with the other.